# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ANITA M. HOKETT,            )
                            )
        Plaintiff,           )
                            )
v.                          )   Case No. CIV-07-049-KEW
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
        Defendant.           )

## OPINION AND ORDER

Plaintiff Anita M. Hokett (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 24, 1957 and was 49 years old at the time of the ALJ's latest decision. She completed her high school education. Claimant previously worked as an activity and social director at a nursing home and a sales clerk. Claimant alleges an inability to work beginning February 25, 2000 due to high blood pressure, pemphigus vulgaris, arthritis status post broken wrist, autoimmune disorder, and stress due to her physical condition.

**Procedural History**

On March 14, 2000, Claimant filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. Claimant requested review of the ALJ's decision, which the Appeals Council denied. Plaintiff did not appeal this decision.

On May 24, 2001, Claimant filed another application for disability benefits. The application was denied initially and on reconsideration. On March 11, 2002, a hearing was conducted before ALJ Michael A. Kirkpatrick in Hugo, Oklahoma. On June 17, 2002, the ALJ issued an unfavorable decision on the application. The Appeals Council denied review. However, on April 16, 2004, this Court reversed the ALJ's decision and remanded the matter to the Commissioner for further administrative proceedings.

On remand, the same ALJ conducted a supplemental hearing on March 2, 2005 in Hugo, Oklahoma. He issued an unfavorable on May 23, 2005. On February 6, 2006, the Appeals Council vacated the ALJ's decision.

On July 31, 2006, a second supplemental hearing was conducted by ALJ Lantz McClain in Hugo, Oklahoma. On October 26, 2006, this ALJ issued an unfavorable decision. In that decision, the ALJ found that Claimant's March 14, 2000 application for benefits was

4

*de facto* reopened as a result of the reliance on evidence from the prior application in the June 17, 2002 decision. Therefore, the ALJ concluded that both the March 14, 2000 and May 24, 2001 applications were adjudicated in the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform a significant range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to follow the remand instructions of the Appeals Council; (2) failing to consider Claimant's hand restrictions; (3) finding Claimant's pemphigus vulgaris was not severe; and (4) improperly rejecting the opinion of Claimant's treating physician.

**Remand on Appeals Council's Order
and Evaluation of Hand Restrictions**

Claimant's first two arguments are essentially interconnected. First, she contends the ALJ failed to follow the instructions of the Appeals Council on remand to evaluate the restrictions imposed by Dr. Rowlan on the use of her hands.

Claimant's relevant medical history begins on October 18, 1999

5

with the diagnosis of pemphigus vulgaris ("PV"). Claimant was experiencing lesions on her chin and in her mouth. (Tr. 136-137). Claimant was referred to Dr. Shurekha Gangasani at the Texhoma Arthritis Clinic in Denison, Texas for treatment. (Tr. 137).

Claimant was treated by Dr. Gangasani, a rheumatologist, for both PV and arthritis. Her first visit occurred on March 1, 1999 on a complaint of a skin rash and possible autoimmune disease to July 10, 2001 where Claimant was on "high risk medication" Imuran for treatment of her PV, polyarthralgia, osteoporosis, and insomnia. (Tr. 154-223, 363-383). Claimant also saw Dr. Dennis Weigand, a dermatologist, in February of 2000 for treatment of her PV and other conditions. (Tr. 301-304).

On May 31, 2000, Claimant was examined by Dr. M. Young Stokes, III, an agency physician. After examining Claimant, Dr. Stokes concluded she suffered from hypertension, "treated with medication and in an acceptable range at this time"; PV, "verified by skin biopsy of the floor of the mouth and tissue from the center of the back; and osteoporosis and osteoarthritis, for which Claimant received treatment. (Tr. 149-153).

On December 31, 2000, Claimant fell on the ice and suffered a comminuted fracture of the distal radius in her right wrist. (Tr. 346-347). The fracture required surgery with a closed reduction and percutaneous pinning of the right distal radius. (Tr. 309).

Claimant was released without restriction by her treating physician, Dr. Kenny M. Grider on May 10, 2001. (Tr. 332).

On October 10, 2001, Claimant was attended by Dr. Nancy Brown, a rheumatologist. Claimant complained of feeling "tired, fatigued and depressed." Claimant reported lesions in the mouth due to her PV but did not have any present at the time of Dr. Brown's examination. She reported being stiff in the morning for two hours, feels like the joints in her fingers well, and does not sleep well. (Tr. 430). Dr. Brown found Claimant's right wrist, small joints of her hands - the third and fourth PIP joints bilaterally, and left knee to be tender. Dr. Brown diagnosed Claimant with PV and sleep disturbance with depression and fatigue. (Tr. 431). These diagnoses, along with osteoporosis of the hips, continued in a visit to Dr. Brown on November 12, 2001. (Tr. 428-429).

On April 7, 2004, Claimant began seeing Dr. Vivek Khetpal in Durant, Oklahoma. At that time, Claimant complained of PV, hypertension, decreased and blurred vision, and fatigue. (Tr. 542). Dr. Khetpal diagnosed Claimant with uncontrolled hypertension, arthritis, PV, mild depression, a history of rheumatic fever, and obesity. (Tr. 543).

On May 3, 2004, Claimant again saw Dr. Khetpal, complaining of PV in her lips, anxiety, blurred vision, and fatigue. Claimant

also reported pain in her hips, leg, and wrist. (Tr. 537). Dr. Khetpal diagnosed Claimant with uncontrolled hypertension, acute exacerbation of PV, mild depression, history of rheumatic fever, and obesity. (Tr. 539).

On June 8, 2004, Claimant reported to Dr. Kheptal that she had sharp chest and left arm pain. She also experienced abdominal pain. Dr. Kheptal diagnosed HTN, anxiety/depression, GERD, and PV. (Tr. 534-536).

On July 7, 2004, Claimant was diagnosed by Dr. Kheptal with generalized fatigue, mild stress with anxiety, gastroesophagel reflux disease, PV, and hypertension, controlled. Cardiac stress tests were "fairly good." (Tr. 529-531).

On October 4, 2004, Claimant was examined by Dr. Stephen D. Rowlan at the request of the ALJ. Dr. Rowlan found a reduction in hand motion bilaterally at the MCP joints. He found it to be attributable to arthritis which may be related to the autoimmune arthritides and secondary to her PV. Dr. Rowlan also noted osteoarthritis in Claimant's wrist. (Tr. 553). He diagnosed Claimant with PV, hand arthritis, hip pain, and hip bursitis. (Tr. 554). Dr. Rowlan also completed a range of motion evaluation chart on Claimant. He found finger flexion limited on both hands to 50 out of 90 on fingers 2 and 3 and 60 out of 90 on fingers 4 and 5. He found Claimant could not manipulate small objects or effectively

8

grasp tools such as a hammer due to limitations in her finger range of motion. (Tr. 557).

Dr. Rowlan also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on Claimant. He found Claimant could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds. (Tr. 559). He also noted a limitation in hand function with regard to pushing and pulling. Dr. Rowlan concluded Claimant could occasionally climb, balance, kneel, crouch, and stoop but never crawl. (Tr. 560). He found Claimant was limited in handling (gross manipulation) and fingering (fine manipulation) and could only occasionally handle and finger. (Tr. 561). Dr. Rowlan found environmental limitations with regard to the presence of hazards. (Tr. 562).

On October 18, 2004, Claimant underwent a mental status examination conducted by Larry Vaught, Ph.D. Dr. Vaught found Claimant was anxious in public places with panic-like symptoms. (Tr. 564). She has experienced both suicidal and homicidal ideations. Id. After administering testing, Dr. Vaught concluded at "Axis I: Anxiety Disorder, NOS, Adjustment Disorder with Depressed Mood, Chronic, Rule Out Major Depressive Disorder; Axis II: Personality Disorder, NOS with Dependent Features; Axis III" See Physician's Report." (Tr. 566).

9

On July 26, 2006, Dr. Kheptal completed a Physical Medical Source Statement on Claimant. He found Claimant could sit at one time for 10-30 minutes, stand for 45 minutes, and walk for 10-30 minutes. He also found Claimant could sit for 3 hours, stand for 2 hours, and walk for 1 hour in an 8 hour day. Dr. Kheptal concluded Claimant could continuously lift up to 5 pounds, frequently lift up to 10 pounds, occasionally lift up to 20 pounds but not lift anything heavier. He also found Claimant could carry continuously up to 5 pounds, frequently up to 10 pounds, and occasionally up to 50 pounds. (Tr. 624). Dr. Kheptal reported limitations in Claimants use of her left foot, and use of both hands. (Tr. 625).

Claimant continued to seek treatment from Dr. Kheptal through July 7, 2006. He consistently reported Claimant's conditions to be PV, hypertension, gastroesophagel reflux disease, anxiety, depression, arthritis, and obesity. (Tr. 628, 638, 642-643, 650, 653, 658, 660, 664, 667).

In the most recent decision from an ALJ in Claimant's cases, the ALJ found Claimant suffered from the "severe" conditions of hypothyroidism, sleep apnea, obesity, status post right wrist fracture, SP ventral hernia, hip pain probably secondary to bursitis, anxiety disorder NOS, adjustment disorder with depressed mood, and personality disorder NOS with dependent traits. (Tr.

468).  However, the conditions were not sufficiently severe to meet a listing, in the ALJ's view.  The ALJ expends considerable ink in characterizing Dr. Gangasani's reports as something other than a medical opinion, largely due to their format.  (Tr. 469-470).  The ALJ ultimately concluded Claimant could perform a significant range of sedentary work and could perform such jobs in the national and regional economy such as clerical person, sorter, and call out operator.  (Tr. 480-481).

Claimant first contends the ALJ failed to follow the instructions of the Appeals Council contained in its remand order by evaluating the opinions of the consultative examiner, Dr. Rowlan with regard to Claimant's use of her hands.  Claimant's second point of contention is essentially an extension of the first argument, asserting the ALJ failed to consider Claimant's hand restrictions.

The Appeals Council specifically found the ALJ's prior decision to be deficient in mentioning "Dr. Rowlan's opinions relating to the claimant's use of her hands."  (Tr. 595). Moreover, as reflected in the recitation of the medical record herein, Dr. Rowlan found notable limitations in Claimant's use of her hands, with regard to both gross and fine manipulation.  In the ALJ decision currently under review, Dr. Rowlan's opinions are acknowledged in relation to Claimant's hip pain.  In regard to

11

Claimant's hands and wrists, the ALJ finds x-rays showed the areas to be "unremarkable" and "[o]ther than some reduced range of motion of the MCP joints of the fingers, the findings on physical examination were basically normal." (Tr. 474). This finding grossly understates Dr. Rowlan's conclusions. Dr. Rowlan found significant range of motion and manipulation limitations in Claimant's hands, bilaterally. The ALJ's statement is tantamount to the exaggerated finding which might be made as "but for the claimant's missing arm, her reach was basically normal." Such glossing over of relevant medical evidence is not appropriate.

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's failure to adequately consider the gravity of the medical opinions of Dr. Rowlan and evaluate their effects upon Claimant's work related abilities requires reversal and remand for further consideration.

**Severity of Claimant's PV**

Claimant next contends the ALJ failed to consider her PV as a severe condition. Claimant would have this Court glean from the medical records that her PV represents the source of all of the other symptoms from which she suffers – fatigue, weakness, and joint stiffness. The problem with this position is the lack of medical evidence in the record to support it. The only medical professional rendering an opinion as to the source of Claimant's hand limitations was Dr. Rowlan. He stated that the condition "may be related to the autoimmune arthritides and be secondary to her [PV]. (Tr. 553). This tepid supposition is insufficient for this Court or the ALJ to conclude Claimant's PV is the originating source for all of her other severe conditions and, therefore, a severe condition itself. This Court finds no error in the ALJ's position in finding Claimant's PV as a non-severe condition.

**Evaluation of the Treating Physician**

As a final argument, Claimant contends the ALJ improperly gave reduced weight to the opinions of Dr. Kheptal. The ALJ found Dr. Kheptal's medical source statement which advises Claimant is unable to perform sedentary work is not well-supported by medically acceptable clinical and diagnostic techniques and is inconsistent with other medical evidence in the record. Specifically, the ALJ finds Dr. Kheptal is a cardiologist, has no expertise in

13

orthopedics, and that his treatment of Claimant "has been directed to evaluation of her cardiovascular status." (Tr. 475). The medical record reveals Claimant was attended by Dr. Kheptal in a number of areas, most outside of the cardiovascular area. Dr. Kheptal was, from all references in the medical records, Claimant's primary treating physician from April of 2004 through February of 2006. During that time, he diagnosed Claimant with PV, hypothyroidism, arthritis, and hypertension. Thus, his diagnostic evaluations and treatment was not limited to cardiovascular conditions as represented by the ALJ.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ should not have rejected Dr. Kheptal's opinions simply on the basis that he is a cardiologist and, certainly, erroneously

found Dr. Kheptal's evaluations were limited to cardiological concerns.  Additionally, the ALJ erroneously rejected Dr. Kheptal's opinions concerning restrictions upon Claimant's ability to sit, stand, and walk because the finding ran contrary to other medical evidence in the record.  However, Claimant's hip and leg pain is well-documented.  Dr. Kheptal's restrictions on weight and digital manipulation are supported by Dr. Rowlan's medical source statement.  Consequently, the ALJ shall re-evaluate Dr. Kheptal's opinions on Claimant's limitations on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 28th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE